# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | CRIMINAL ACTION NO. 3:26-CR-0198-S |
| ABRAHAM PEREZ (03) | § | |
| VICTOR RAMIREZ (05) | § | |
| ENRIQUE RAMIREZ (06) | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses the Government's motion to revoke the Orders Setting Conditions of Release ("Motion") contained in the Government's Brief in Support of Motion for Review and Revocation of Pretrial Release Order ("Government's Brief") [ECF No. 80]. *See* Government's Br. 1. The Court has reviewed the Government's Brief, Defendant Abraham Perez's Response in Opposition to the Motion [ECF No. 81], Defendant Enrique Ramirez's Response to the Motion [ECF No. 82], Defendant Victor Ramirez's Response to the Motion ("V. Ramirez's Response") [ECF No. 83], and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

### I. BACKGROUND

Defendants Abraham Perez, Victor Ramirez, and Enrique Ramirez are charged with Conspiracy to Possess and Transfer a Machinegun, in violation of 18 U.S.C. § 371 (18 U.S.C. § 922(o)). *See* Indictment [ECF No. 1]. The Government moved to detain Defendants and their three co-defendants pending trial.[1] *See* ECF No. 71. The Magistrate Judge held a hearing on the

---

[1] Co-defendants Brian Rodriguez and Justin Jasso waived their rights to a detention hearing. *See* Waiver of Detention Hr'g [ECF Nos. 58, 65]. Accordingly, the Magistrate Judge granted the Government's motion for detention as to them. *See* Detention Order [ECF Nos. 59, 66]. The Magistrate Judge denied the Government's motion for detention and issued the Order Setting Conditions of Release [ECF No.61] as to co-defendant Chelsea Rosas, and the Government did not file a motion to revoke the order. *See* ECF No.

Government's motion on May 6, 2026. *See* ECF Nos. 62, 67, 69. At the conclusion of the hearing, the Magistrate Judge denied the Government's motion as to Defendants and issued the Orders Setting Conditions of Release, releasing Defendants on certain conditions. *See* ECF Nos. 63, 68, 70. At the Government's request, the Magistrate Judge stayed the issuance of the Orders Setting Conditions of Release until 5:00 p.m. on May 8, 2026. ECF No. 56. The Government filed its Notice of Motion and Request to Stay Pretrial Release Order ("Notice") [ECF No. 72], requesting that the Court extend the stay of the Magistrate Judge's release order "until such time as the motion can be heard." Notice 1. On May 8, 2026, this Court extended the stay of the Orders Setting Conditions of Release until 4:00 p.m. on May 15, 2026. Order [ECF No. 78] 1. The Government then filed its Brief, requesting that the Court revoke the Orders Setting Conditions of Release as to Defendants because "no conditions or combination of conditions of release can reasonably protect any other person and the community from [Defendants]." Government's Br. 10.

## II. LEGAL STANDARD

Upon a motion to revoke a pretrial release order under 18 U.S.C. § 3145, the district court reviews the magistrate judge's order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (citation omitted). Pretrial detention of a defendant should be ordered if, after a hearing pursuant to a circumstance listed in 18 U.S.C. § 3142(f), the court finds by a preponderance of evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985) (holding

---

73. Accordingly, only Defendants Abraham Perez, Victor Ramirez, and Enrique Ramirez are subject to the instant Motion.

that a judicial officer should apply the clear and convincing evidence standard in making a "reasonably assure safety" determination and the "simple preponderance standard" in making a "reasonably assure appearance" determination); *see also Rueben*, 974 F.2d at 586 ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required." (citation omitted)). In determining whether pretrial detention should be ordered, the court should consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### III. ANALYSIS

Defendants are charged with Conspiracy to Possess and Transfer a Machinegun, which is a felony that "involves the possession of use of a firearm." 18 U.S.C. § 3142(f)(1)(E); *see* Indictment. Accordingly, the detention hearing was held pursuant to one of the circumstances listed in 18 U.S.C. § 3142(f), and the Court may order the pretrial detention of Defendants if, considering the factors listed in 18 U.S.C. § 3142(g), it finds by a preponderance of evidence that no condition or combination of conditions will reasonably assure the appearance of the person as required, or by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(e)(1).

### A. The Nature and Circumstances of the Offense Charged

Defendants are charged with a serious offense that involved multiple firearms and machinegun conversion devices. *See* Indictment ¶¶ 14, 16; *see also* 18 U.S.C. § 3142(g)(1) (stating that, under the first factor, a court should consider "whether the offense . . . involves a . . .

firearm"). According to Bureau of Alcohol, Tobacco, Firearms, and Explosives Task Force Officer Andrew Gannam, who testified at the detention hearing, machinegun conversion devices "are extremely dangerous because they are hard to control." Detention Hr'g Tr. ("Transcript") [ECF No. 76] 19:25-20:2. Further, the scope of the alleged conspiracy went beyond the involvement of Defendants; it involved three co-defendants and other known and unknown co-conspirators who bought and sold machineguns "via social media applications." Indictment ¶ 15. Accordingly, the widespread and serious nature of the offense with which Defendants are charged indicates that they should remain in custody pending trial for the safety of the community.

### B. The Weight of the Evidence Against Defendants

The Government presented significant evidence against Defendants at the detention hearing and through the exhibits attached to the Government's Brief. According to Officer Gannam's testimony, investigators conducted six controlled buys with Defendants and their co-defendants over the course of three months. Tr. 10:8-16:15. Three of these buys involved Defendants meeting with undercover officers to exchange machinegun conversion devices for cash—one transaction involved Perez selling seven machinegun conversion devices to an undercover officer, *id.* at 13:5-13, another transaction involved Enrique Ramirez driving Victor Ramirez to sell five machinegun conversion devices to an undercover officer, *id.* at 15:19-16:19, and the last transaction involved Victor Ramirez selling a firearm and five machinegun conversion devices to an undercover officer, *id.* at 17:4-21. Officers also executed search warrants at each Defendant's residence and found four firearms and 28 machinegun conversion devices attributable to Perez, 19 firearms and 23 machinegun conversion devices attributable to Victor Ramirez, and four firearms and three machinegun conversion devices attributable to Enrique Ramirez. *Id.* at 37:13-15, 38:11-12, 43:16-19, 49:24-25, 50:1-4. Officers also found magazines and ammunition

in all of the Defendants' residences and 13 grams of cocaine and boxes of THC at Perez's residence. *Id.* at 36:15-17, 37:25, 38:1-4, 43:20-21, 49:20-22. Further, the Government produced a video from Perez's social media account that show him "driving in his Toyota Corolla with an AK-style pistol, a Draco, in the passenger seat, as well as a Glock firearm with a drum mag tucked." *Id.* at 35:12-15; *see* Government's Br. Ex. 16 [ECF No. 80-11]. And it produced photos from Victor Ramirez's Instagram account showing multiple firearms and machinegun conversion devices. *See* Government's Br. Exs. 1, 2, 3 [ECF Nos. 80-1 through 80-3]. Accordingly, the significant evidence against Defendants weighs against their release.

### C. The History and Characteristics of Defendants

Under this factor, the Court considers each Defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. 18 U.S.C. § 3142(g)(3).

### i. Abraham Perez

Perez has no criminal history. Pretrial Services Report [ECF No. 44-1] 1. He is "22 years old. Born in Dallas. He's never left the state, much less . . . the country. He doesn't have a passport. . . . He has family ties." Tr. 125:19-24. Perez's mother also testified that she would be willing to act as custodian for Perez. *Id.* at 99:5-13. However, Perez's past conduct is concerning. According to Officer Gannam, Perez was involved in a "gun deal" that "turned into a gun battle where [he] and another individual shot at each other in the parking lot of an Academy in Mesquite at 4 p.m." *Id.* at 30:7-10. During that gun fight, "a round went into a witness's vehicle that was

occupied by people." *Id.* at 55:5-6. Further, Officer Gannam testified that Perez has "three eTraces as well to his name," indicating that three firearms legally purchased by him were recovered at the scene of three crimes, and "two of those were involved in shootings." *Id.* at 30:10-23. Although Perez has family and community ties and no criminal history, his past conduct, particularly his prior involvement in shootings, indicates that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

### ii. Victor Ramirez

Victor Ramirez has lived in his family's house in Dallas for his entire life, and his parents are willing to be his custodians, indicating that he has family and community ties. *See id.* at 107:15-18; Pretrial Services Report [ECF No. 47-1] 1. However, Victor Ramirez's criminal history reveals that he was involved in an assault offense with his brother, Enrique Ramirez, in 2022, and he was charged with the lesser included offense of misdemeanor assault, which is still pending in state court. *See id.* at 46:1-4; V. Ramirez's Resp. 3. Additionally, he was charged with Unlawful Carrying of a Weapon in 2021, which is also pending in state court. Pretrial Services Report 1. Of particular relevance is the fact that Victor Ramirez was on bond pending trial for those cases when he committed the instant offense. *See* V. Ramirez's Resp. 3; *see also* 18 U.S.C. § 3142(g)(3)(B) (stating that, under the third factor, a court should consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial"). Victor Ramirez was in violation of the terms of his bond by possessing a firearm and being arrested for the instant offense. *See* Tr. 54:8-13; V. Ramirez's Resp. Ex. A, at 3. The circumstances of the misdemeanor assault case also show that Victor Ramirez has a history of violence. Officer Gannam testified that Enrique Ramirez, Victor Ramirez, and another individual "ganged up on the single victim and beat him up to the point where he had a concussion," a broken orbital, and a nasal

fracture. Tr. 40:19-41:23; *see* Government's Br. 14. Victor Ramirez's past conduct and criminal history outweigh his family and community ties and indicate that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

### iii. Enrique Ramirez

Enrique Ramirez's "entire family and life are here in the Dallas area." Tr. 130:1-2. Additionally, he "works full time" and "would be able to return to his job." *Id.* at 106:4-8. Regardless, his criminal history and past conduct that show that he poses a risk to the safety of the community. Enrique Ramirez was involved in the same assault offense where he, Victor Ramirez, and another individual beat up a victim, causing a concussion and broken bones in the face. *Id.* at 40:19-41:23; *see* Government's Br. 14. Enrique Ramirez pleaded guilty to aggravated robbery and evading arrest, and he was on deferred adjudication probation for those convictions when he committed the instant offense. Pretrial Services Report [ECF No. 49-1] 4. Like Victor Ramirez, he was prohibited from possessing a firearm. *See* Tr. 44:18-22. Accordingly, Enrique Ramirez's past conduct and criminal history outweigh his family and community ties and indicate that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

### D. The Nature and Seriousness of the Danger to Any Person or the Community Posed by Defendants' Release

The balance of the circumstances and characteristics discussed under the first three factors indicate that each Defendant's release poses a serious risk of danger to any person and the community. Additionally, certain circumstances pertaining to Perez and Victor Ramirez indicate that they pose an even higher risk of danger to the community. As to Perez, Officer Gannam testified that there were shell casings in his car, suggesting that "weapons were being fired out of the vehicle and then cases were being expended back inside the vehicle." *Id.* at 37:2-5. This

conduct, along with his past involvement in shootings, indicates that Perez's release poses a risk of gun violence to the community. Further, Perez was identified "as a potential source of supply for others for Glock switches" and auto sears, and, according to Officer Gannam, this "make[s] him more dangerous" because he is "putting larger numbers in the street to more people," including "plenty of people on Instagram" that officers have not identified. *Id.* at 39:19-40:4. As to Victor Ramirez, Officer Gannam testified that his Instagram showed "nonstop weapons purchasing and sales: The purchase and sales of auto sears, [machinegun conversion devices], Glock switches, full automatic AK firearms, specifically AK platform pistols and rifles." *Id.* at 47:6-12. These circumstances indicate that the release of Perez and Victor Ramirez presents a high risk that they may continue putting large amounts of machineguns and machinegun conversion devices into the community. This factor weighs against Defendants' release.

Having considered the factors set out in 18 U.S.C. § 3142(g), the Court finds, by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any other person and the community. *See Rueben*, 974 F.2d at 586. Accordingly, the Order Setting Conditions of Release as to each Defendant must be revoked.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the motion to revoke the Orders Setting Conditions of Release contained in the Government's Brief in Support of Motion for Review and Revocation of Pretrial Release Order [ECF No. 80]. The Orders Setting Conditions of

Release [ECF Nos. 63, 68, 70] are **REVOKED** and Defendants shall remain in custody pending trial.

      **SO ORDERED.**

      SIGNED May 14, 2026.

                              **KAREN GREN SCHOLER**
                              **UNITED STATES DISTRICT JUDGE**